Good morning. May it please the court. Jules Massey on behalf of Orion Marine Construction, the appellant. The Limitation Act bestows two distinct rights to vessel owners. The first right is a substantive right, the right to limit liability to the value of its interest, which is usually the value of the vessel or the vessel's pending freight. The second right is really a procedural right. It's the right to bring a case in federal court in order to marshal all claims against the petitioner into a single forum. I hate to knock you off your stride so early, but I'm curious about the fact that courts seem to have assumed or asserted that this time limitation is jurisdictional. The Supreme Court has been on a monster tear recently telling us, lower courts, you've got to stop calling things jurisdictional when they're not. Ordinary time bars, limitations periods, as the Supreme Court has repeatedly said, are not jurisdictional. They're claim processing rules. I don't mean to spring this on you, because I know that neither party really delved into this in the briefing, but do you have a position about whether this time limitation is in fact jurisdictional and whether it matters, frankly? Jules Massey To answer the latter part, first, I don't think it matters, and two, I think it is jurisdictional because the right to bring this specific type of proceeding is granted by statute, and if the six-month statute of limitation runs before the petition is brought, the federal court no longer has subject matter jurisdiction to hear that proceeding. Stephen J. Levy Well, I mean, just to, and again, this is not a quiz. If I had come on to this earlier myself, maybe we would have issued sort of a briefing notice, but the Supreme Court has said, for instance, that filing deadlines are quintessential claim processing rules, not jurisdictional limitations, and they've said that that applies even when the time limitation is important, when it's framed in mandatory terms. They say, unless Congress does something special within a time limitation, then we're not going to treat that time limitation as jurisdictional, and I read this, it just looks like an ordinary statute of limitations to me. It looks like every other statute of limitations. You know, you must be brought within six months after a claim. It gives the owner written notice of a claim. It doesn't seem like there's anything really special going on, so it just seems to me, and likely, that this is a claim processing rule, not a jurisdictional rule. Now, again, I'm not, frankly, sure that that matters here, given the fact, especially, that you guys have had discovery about the timeliness of this thing, but I just raise it because I think that there is a real possibility that the rule is not jurisdictional within the meaning of this Supreme Court jurisprudence recently about this claim processing. And in all candor, I really can't add too much more to that conversation. I'm happy to brief it further. Let me just sort of follow up on that. The subject concerned me as well, because as I read the law, Congress has to provide a clear statement that the time requirement is jurisdictional, and when you read what they did here, you don't find any such statement from Congress that they meant for this to be jurisdictional. And if it's not jurisdictional, just to sort of take the piece on the board to the next step, then we're not reviewing this under 12B1 for a question of subject matter jurisdiction, but rather, we're either looking at it under 12B6 for failure to state a claim, or Rule 56 for summary judgment. And there are important differences that flow from that as well, because whatever the district court did or did not do, it did not simply look at the complaint and any documents that were made a piece or part of the complaint. It went far beyond the complaint. Both sides put in a good deal of evidence, which would effectively have converted it into a Rule 56 summary judgment motion in function, if not in form. But if, indeed, that's the standard, then where the jurisdiction resolve and decide material facts in dispute, whereas under 12B1, the district court, where there's a factual issue there, is obliged to make findings of fact and reach these determinations as a matter of jurisdiction. You follow what I'm saying? So effectively, if there's a material fact in dispute here, and maybe there is, maybe there isn't, I don't know, and we're looking at it under 56, rather than 12B1, then the district court was not in a position to resolve that, and it might actually have to go back to the district court, because these might be actual issues to be tried. You follow what I'm at least raising with you? I only say that because in response to Judge Newsom's question, is it jurisdictional, and if not, does it matter? Your answer is, I don't know whether it's jurisdictional, but it doesn't matter. It seems to me, if it isn't jurisdictional, it might well matter, because how the district court grapples with fact is very different if it's arising under 12B1, dismiss for lack of subject matter jurisdiction, as opposed to Rule 56, is there a material question of fact in dispute, or would you otherwise be entitled to judgment as a matter of law? Do you follow what I'm sort of laying out? I do, Your Honor. One further possibility is this is maritime jurisdiction, I assume, so there's no jury, is there, ordinarily? There can be, but in an admiralty case brought under 9H, like this petition was, it's judge alone. And all the parties thought they were operating in a finding of fact context, so maybe instead of Rule 56, it's a bench trial. Or an evidentiary hearing at a minimum. In which case, you might be right that maybe it didn't make a difference, because maybe you had findings of fact, functionally speaking. The label you paste on it may or may not be significant, is all I'm saying, but just speaking for myself, this does not look jurisdictional to me. This looks like a claims processing rule that comes up all the time under the statute of limitations. Congress did not tell us clearly in words or substance that they meant this to be jurisdictional. If that's right, where do we go from here? Well, I think that if, to be honest, I mean, this is not something that I was prepared to discuss. I understand, and in fairness to you, we did not, and perhaps we ought to have flagged the issue in advance and said, brief it or be prepared to discuss it. With that, fire away and we'll give you the time to make your argument. We're just sort of giving you some of our thoughts of the things that trouble us. Okay. I made the distinction between the substantive right that's granted by the Act and the right to this type of proceeding, because we're only dealing with the right to file a federal petition. We're not dealing with the substantive right that Orion has to limit its liability under the Act. That's a separate section that comes under 30505, not 30511 in the Act. Because the basis of the dismissal was untimeliness, it's very important to examine the six-month statute of limitations. And the 11th Circuit has acknowledged two tests, one that I refer to as the Herrera test. There's never been a determination of which test takes precedent. There's never been a determination of which test applies in different factual scenarios. But consistently, the 11th Circuit has applied both tests whenever being asked to review whether proper notice under the Act was given to a vessel owner. What the Doxey-McCarthy test adds to Herrera is something about value or amount. The thing about Herrera that has always struck me as odd is that there's nothing in that three-part test about value or amount. So you might have just these sort of ship owners just randomly filing claims without any sense of whether or not the amount is really going to meet the threshold. Right, and that's exactly why I believe the Doxey case is referred to as the most authoritative case on notice. Yeah, Wade said that, right? I believe so, yes. I think in Paradise Divers, in fact. So I don't believe, just from looking at Paradise Divers, looking at PG charters, though there's never been a determination of which test is superior, for example, or whether they're supposed to be read together, this court has read them together. And I think that that's probably the most appropriate test is to thread them together and look at it that way. Why do we have these two different kind of evolutionary chains of tests? I think it comes from, it's very clear in McCarthy, they examine it quite a bit, is that the typical manner that a vessel owner gets notice of a claim is through a lawsuit. And when you look at the Marrera test, it's describing a complaint. That's what that is. It's a demand, I blame you, pay me, right? As opposed to, McCarthy drew a distinction between letters that are sent, and McCarthy said, well look, there's no prejudice, there's no harm in the delay of filing a petition for a limitation if there's no lawsuit pending. That's what the six-month statute, by the way, was designed to do, because originally the Act did not have a six-month statute of limitations. That was added because what was happening is that ship owners would go through a trial, get a judgment, and then go and file a limitation petition. So basically to curb that abuse, the abuse of vessel owners, the six-month statute was put in. But McCarthy recognized that now the pendulum has kind of swung the other way, that the potential for abuse is really in the notice. And that's why McCarthy said that the letter notice has to have a higher standard than a normal complaint would. In other words, but your contention here isn't right, I assume, that a letter notice can never be enough. You say, look, so long as it's written notice, if it's a complaint, if it's a letter, it's fine, so long as that written notice itself gives – sort of alerts the ship owner to a reasonable possibility of a claim that exceeds the value of the ship. Absolutely, and that gets us to the reasonable possibility discussion, which reasonable possibility, if you read several of the different cases, it's clear that the reasonable possibility has to be on the page within the four corners. Actual knowledge that there was an accident, actual knowledge of other claims, does not trigger that six-month statute of limitations. So you have to read the reasonable possibility that exists in the document, and that's clear in Morera, in fact. Once that reasonable possibility is raised, that's when the six months start ticking. And I think there was some confusion in the district court because they talk about that our reading of it was that you get six months to investigate and then six months to file a claim. That's not what we said at all. The six months starts once reasonable possibility is raised. What are the examples of reasonable possibility? I think DOCSI is a great example, actually, because you have the actual potential claim, which may exceed the value of the vessel and is subject to limitation. And what was the communication? What was the writing that was given in DOCSI? It's a single claimant, personal injury, and he had already at that time had $110,000 in meds. That, within the four corners of a document, $110,000 in meds and counting, that's at least a half-a-million-dollar case. So you would say, like, an ad damnum, a demand is sufficient, but you don't contend that a specific dollar demand is necessary. No, but it has to be descriptive enough to put you on notice that this is going to be an extreme thing that I'm going to have to surrender my vessel to the courts to fix. And absent a specific request for a specific amount of money, what's the sort of evidence that would give rise to, like, a holy cow, this is big? Well, a good example – I can give examples on both sides, one where it doesn't and one where it does. As far as the RLB case, which is a newer case out of the Fifth Circuit, it's a per curiam opinion. It's also the very first – I believe it's the very first limitation case that the Fifth Circuit has ever considered whether something other than a complaint satisfies notice. The RLB case was a series of letters, so we have that aggregate communication issue again. But they're different, right, because with respect to a specific incident. It's one incident. It's one incident, and it's one family on a boat represented by the same attorney. So he's communicating as a group to the vessel owner's representatives, and he is describing things like multiple injuries, PTSD, graphic photographs, and here's the thing. There was a fatality. You don't need a whole lot of description after that. That's adequate notice. Now, cracked stucco. I have a pool leak. These property damage claims of which Orion actually received written notice are really de minimis in the scheme of these kinds of claims. All of these claims, all of these cases are personal injury claims with a lot of dollar value to them. But look at Morania Barge. The Morania Barge case is a property case. It's a fuel contamination case. And it started to be litigated with almost like a some certain that was represented to the barge company, and then all of a sudden they amend their complaint, and I think it went from $300,000 to $2.5 million, at which point the barge company said we're going to go ahead and file our limitation petition, and that was okay. Why? Because they were never put on reasonable notice that it was going to jump from $300,000 to $2.5 million. You referred just a minute ago to the claims with respect to which Orion received written notice. How many of those are there? And I assume that you're willing to include within that bucket claims with respect to which Orion or its agent received notice, and I guess we can have a debate about whether FARA is an appropriate agent and whether FDOT is an appropriate agent. With respect to how many claims did Orion or its agent receive written notice? Okay. Written notice, as we interpret the requirement of written notice under the Act, is four. Yes, four. It's actually the first four. It was Dawson, Orsi, White, and Allen. They were the first four, and they're the only ones that served written notice prior to the November 11th, 2014. We use that as a cutoff because otherwise it would be timely. Our petition would be timely. Why wouldn't it be written notice if a claimant had given notice to FDOT, and FDOT in turn reduced it to writing and submitted it to Orion? Because I take it if you say it's only four of the nine, you're excluding that category of folks who complained to FDOT. Why would it not be sufficient to alert FDOT, which in turn told Orion in writing? That would be written notice, wouldn't it? I'm just looking at the literal terms of the statute. You would have gotten notice from FDOT, which had its own rights and duties as well. That is correct. First off, Congress didn't do us any favors when it just said written notice of a claim. There's no instruction at all as to what constitutes sufficient written notice. But before you give up too easily, I mean the statute says the action must be brought within six months after a claimant gives the owner written notice. It's not just written notice in the ether. It's from claimant to owner, from claimant to owner. Right, and that is the black letter of the law. And we're supposed to take Congress as what they said. What I meant by that about the written notice of a claim is what is a sufficient notice. Here's the equivalent. Here's the problem I have with the idea that it's being called into FDOT, and then FDOT is sending written notice, hey, I got a phone call. Right, but if FDOT is the claimant, then you've literally satisfied the terms. Well, they are not. And actually we briefed this in our reply. It has to be a claim subject to limitation. And FDOT would not be subject to limitation because Orion has a personal contract with FDOT, which takes it out of any limitation action. We have an indemnification obligation that we can't skirt by filing a limitation action. FDOT would never, ever be a claimant in a limitation. So as a matter of law, they can't be a claimant. That is correct. Okay, why don't you bring your remarks to a close, and we'll give you the time for rebuttal here. Mr. Massey. Okay, yeah, I'll- If there was anything else you had wanted to say, fire away, but I just, really we've gone way over the spots to- Yes, and I apologize. We were the ones who really took up the first six minutes of your time. Well, I just want to say that the one part of the judge's order that we take real issue with is this idea that if Orion had investigated, we would have been put on notice of all of these additional claims. And that is on, the court order is docket 634, and it's page 23 of the order. There was constant vibration monitoring going on during the entire project. There were public hearings, meetings held where anyone who was having problems with the construction project could come and bring their grievances. And Angelo Soldati, Orion's representative, went out to the different properties as they found out about any issues very early on, and found that there really wasn't much going on, including specific- require investigation before there was a reasonable possibility of the claims exceeding the value. Is that not your real argument that you're making right now? Well, it's that, but also to somehow ferret out claims that hadn't even been brought yet. And if I may, and I realize we're going over. But I apologize. And we're going to have to do a five-minute break. I have a question for you. Okay. So here's the thing that we're going to have to do. And first, I need a reasonable amount of time. Before we begin, I just want you to know that we are regarding this as a community issue. And we talk to the entire community on a daily basis. We have been taught, and we've been taught this time, and we've been given this advice and that guidance. And I don't think that any of us in this room have been given this advice, but we have received it. Thank you. May it please the Court, Attorney Ryan Reese for the Appellees, Mark and Christine Dawson. I want to start by just addressing very briefly the question by Judge Newsom regarding the subject matter jurisdiction and whether the Act is indeed viewed as jurisdictional. I think that's pretty clear in the case law, at least out of the Fifth Circuit in the Eckstein and RLB contracting opinions, that the Limitation Act provides a benefit to the ship owners that if they do not comply with the six-month time requirement, you're out. You don't get to enjoy this grandiose protection that the law affords these ship owners. And certainly, I guess as sort of an alternative to that, we don't believe that that even matters at this point because there really is no dispute of fact. We have a district court opinion that comprised 30-some-odd pages with 16 pages finding a fact that said that this particular ship owner did not perform a reasonable investigation. They set on their rights to enjoy this grandiose protection. And in fact, they neglected the claims that they did receive as early as 2012. And so the ship owner in this case is elected to challenge on legal grounds, but really at this point in the case, I'm not aware of any dispute of fact that's been briefed for this court to look at under the clearly erroneous standard. Let me ask you to help me. How do we review this case if we were to conclude that this is not a matter of subject matter jurisdiction? It doesn't mean you're wrong on the six months. It doesn't mean you're right. It's just not a jurisdictional requirement. Therefore, what the district court did was something different even though he called it jurisdictional, whether it was a 12B6 motion, a summary judgment motion, or a bench trial on this case, which is in the admiralty and maritime jurisdiction of the court. How should we treat it? Well, the court should treat this as a 12B1 factual attack on subject matter jurisdiction, I believe. But you're missing my question. If we assume this doesn't go to subject matter jurisdiction, you're wrong, your colleague was wrong, the district court was wrong. The Supreme Court's told us that these are generally claims processing rules unless Congress clearly evinced an intent to make it jurisdictional. And if we were to conclude that's not what Congress did here, whatever it is, it isn't 12B1 is my question. What then is it and how ought we to address it? At this point, I think you would treat it as a motion to dismiss, convert it as a motion for summary judgment under Rule 56. The court, the district court. But you understand if you look at it under Rule 56, the trial judge has to draw all inferences in favor of the non-moving party. It's very different than under 12B1. And then the trial judge has to ask whether there are material facts in dispute in which case he cannot resolve them. Whereas if it's under 12B1, not only may he, he's obliged to make findings under 12B1. Do you follow the problem that at least I'm having? I do, Judge, and I'd rely on the alternative argument that even after this period of limited discovery afforded by the district court, these facts just were not in dispute. Okay. So then we might as well just treat it as if he had made findings of fact at a bench trial. That's right. Okay. Thank you. And so I also want to touch upon Judge Newsom's question regarding kind of the scope of inquiry here. I think Your Honor used the phrase, you know, at what point does it trigger a holy cow, this is a big type issue? Certainly this would be the case, Your Honor. I think these facts are unparalleled in any limitation case I've ever read, and I think that the court is probably aware. We had what's essentially considered a two-year voyage. So we had two years' worth of construction activities, periods of nine months and 13 months of consecutive pile driving. That's a continuous tort spanning two years. We had, in effect, a residential area with single-family homes, multi-family housing, homes that are waterfront that arguably would carry more value than other homes. One home in this area alone would be valued at just about where the shipowner alleges their limitation fund comprises, the $1.2 million range. Can I ask you a quick question? Before we get to the reasonable possibility of a claim exceeding the value, how many of the nine claimants gave written notice to Orion? The statute says claimant gives written notice to owner. How many of the claimants themselves gave written, not someone else, gave written notice to the owner, not someone else? I would agree with opposing counsel when they say the first four claims did indeed give written notice to Orion itself. Was it Orion itself or an agent, just so I'm clear? It would have been either Orion or an agent. You have to understand as well that there was a body of communication here. These were multiple communications, chains and chains of emails. They were given to Orion itself, its project managers. They were given to its project partner, the Florida Department of Transportation, and their information specialist. They were given to Mr. Litherland at Forest Services. At any rate, even if, let's just consider the court for a second, considers that this wasn't written notice, Orion treated these as written notice. We know this because Orion's third-party administrator, FARA, wrote back in letters to these claimants back in 2013 and early 2014, and this is what it says. FARA is representing Orion as its third-party administrator. It identified the Bayway Bridge Project and identified its client as Orion Marine Construction. It assigned a claim number to each one of these folks. It identified each one of them as claimant Mr. Dawson, claimant Mr. Orsi, claimant Mary O'Brien White. And then in the body of the correspondence it says, we acknowledge receipt of your claim. Let me go right to the question again. So four of the nine gave written notice and the other five did not? You agree with that? Four of the nine initial claimants gave strict written notice through. The statute doesn't say strict. It says written notice by the claimant to the owner. Were those folks who gave notice through FDOT, which in turn reduced it in writing and sent it on to Orion, do they comply with the statutory requirement in your view? Absolutely, Judge. Absolutely. So then your view is that notice was given by all of them? That's right. I thought I heard you just say in response to Judge Newsom that four of the nine gave notice under the statute. So Judge Newsom asked if, I believe not to misconstrue your question, was whether that notice went specifically to Orion. Okay. I'm asking is it your view that the written notice was sufficient from all nine? Yes, sir. Yes, sir. Absolutely. How would the notice have been sufficient from those claimants who simply picked up the phone and called Orion but never submitted anything in writing to Orion? And then internally Orion prepared some e-mails that went back and forth. That wouldn't be written notice from the claimant though, would it? Orion certainly treated those as written notice. Well, however they treated it, would that be written notice under the terms of the statute is my question. Arguably, Judge, no. Those last five claims where they were either routed to FDOT and then they- Well, no, I think they fall into three different categories. I just want to be clear here. One group are folks, I guess it was four, who wrote Orion specifically. That's easy. That's written notice. Then there's another group of, I think it was three, who communicated with FDOT orally. FDOT then reduced it to writing and sent it on to Orion. And then the third group would have been two who simply called Orion but put nothing in writing. You agree with respect to the last two, there's no written notice from them? I would agree with that. I would agree with that. Okay, so we're down to seven now. That's what the trial court- Of the first four, there's written notice. Whether it's good or not is another question. Whether it's sufficient or not is another question. There's written notices to four. I'm asking about the three in the middle. The three who gave oral notice to FDOT and FDOT in turn reduced it to writing and sent that writing on to the owner. How would those be written notice from a claimant to Orion? Unless you say FDOT is a claimant or unless you say FDOT was somehow their agent. That's exactly the point of law that we would rely upon. That FDOT was a claimant or was their agent? FDOT was their project partner. That makes them their agent. That's correct, Judge. And under the Doxy case out of the Second Circuit- Not that they were a claimant in their own right. That was an issue that was briefed in the reply. Yeah, I'm just trying to make what's a very interesting and difficult case at least simpler. Right. And so to indulge the court, let's say that FDOT was operating under apparent authority. Okay, so they were an agent. Yes, correct. And just so I'm clear, what's the theory of apparent authority? See, I would have thought that perhaps Orion might have been FDOT's agent. I mean, Orion is the contractor building something for FDOT. But I think agency principles, imputation doesn't run upstream. It only runs downstream. So notice to the principal is not notice to the agent, although notice to the agent is notice to the principal. In this case, they were project partners. And so I think that the Doxy case would have, in looking at the agency relationship, you have to look at how these partners, their personnel, were holding themselves out to be. And each one of them, FDOT's information specialist, FDOT's claims department, they were all receiving these claims. And this too, it seems somewhat inequitable, but this burden on 200 folks, 200 residential owners, to know who exactly to send their notice to. I mean, this is a huge government project. The contract is $40 million. These folks don't know who to give their notice to. They're just calling people up saying, hey, you know, the pile driving here is shaking my home. It's destroying my foundation. It's putting cracks in my drywall. And certainly I believe the Moranian. But what we're asking for initially is who gave written notice? Then we'll ask whether it was sufficient. So you agree that two did not give written notice. They're out. So then we're looking at the first four who gave written notice and the additional three through FDOT, not because FDOT was a claimant but because FDOT was an agent, actual or apparent, of the three who gave them oral notice. Correct? That's correct, Judge. Okay. Tell me then about the sufficiency of the notice itself. Well, the sufficiency of the notice. That is where I have a major concern with your case. Even if we assume that in calculating or evaluating what the company, even if we assume in determining whether there's a reasonable possibility that the claims will equal the value of the ship, even if we assume that we include all of the knowledge that the company has, and actually there's some case law to support that, even if we assume that and even if we count all nine and not just seven, it seems to me it is pretty remote that the company would have thought that the value would be $1.2 million or $1.6 million. Obviously, the pool leak is almost nothing. The cracks, the worst you've got, Orsi and White, who had cracks, but their totals came up to $50,000 and $68,000 or something like that, and you had seven or nine claims total in two years. It seems to me that, and furthermore those, and while that particular map that's in front of us now and was added to the reply brief was not in the record, I'm sure that it was in the record that these first nine claims were all very close to the bridge itself. So I don't see why the company would have thought that there would be, if there hadn't been in two years, especially with the communication that was ongoing, that there hadn't been more and more serious claims, that they wouldn't have any idea that it would total $1.2 million even. Your point's well taken, Judge. However, that's the whole purpose of performing a timely investigation. But that's another thing. I do think the case law is pretty clear. Eckstein and Exxon Mobil and the Fifth Circuit speak directly to this, that the duty to investigate does not arise until there is already a reasonable possibility, and then you've got six months. Is that not true? So when you're presented with an initial claim, that triggers your reasonable possibility? No, not a claim for the pool leak. Absolutely, Judge. I would contend it absolutely does. You acknowledge Eckstein and Exxon Mobil say exactly the opposite. Under the 1982 Morania case, when a shipowner is presented with notice of a potential claim, that triggers your duty to investigate, whether that claim or other potential . . . I saw that language in Morania, and later in Morania it talked about what happened in that case. Of course, you take the language that they said in context of that case. What happened in that case is that the company said, well, tell me about your claim, and the claim turned out to be nothing, and so it did not rise to the level. But Eckstein and Exxon Mobil dealt specifically with this and held that the duty to investigate did not arise until the company knew that there was a reasonable possibility. Is that not true? That is true, Judge, but I would contend that the facts of this case are much different, insofar as had the shipowner performed some kind of investigation, they would have discovered . . . to reasonable possibility of equal value, equal to the value of the boat. I would dispute that, Judge, respectfully. If you didn't have a duty . . . If a pump being presented with, let's say, a claim that did not exceed the threshold of the ship, if that was the blanket standard, then there wouldn't be a reasonable possibility test at all. You would have just a blanket rule that the shipowner has to have a claim that exceeds that particular value. Well, he says not necessarily a dollar figure. He just says that your notice, and really, it's not just RLB, and it's not just Eckstein. Doxey says this. McCarthy says this. That your notice has to give rise to a reasonable possibility of a claim that exceeds the value. Not a dollar figure attached to it, he admits, but something that puts the shipowner on notice that, in fact, the claim might exceed the value. We would agree that the notice that was given by even the initial four claimants would have put a reasonable possibility of a claim or exposure. I mean, this whole case is about exposure, and so you look at four claims that were all adjacent to Ground Zero. That was the first leg of construction in 2012. Knowing that there were going to be two more years of pile driving, 18 more piles, that you're in a heavy residential area, waterfront properties, certainly we would contend that that put them on a reasonable possibility of an exposure exceeding $1.2 million. And I see that I'm out of time. I do have one really important extra point to make. You may proceed. If the court would indulge me. You may. And so this idea is belied by Orion's own logic. So they contend, and they made this error, they contend that they were on notice in December of 2014, and so that begged the question for Judge Scriven, the trial judge, to answer, well, what changed between December 2014 and November 2014? What changed in that month that would somehow apprise them, oh, no, we need to pursue our limitation remedy? And so Judge Scriven went back through the record to see what changed. What kind of claims had they been presented? What knowledge did they have that would inform this limitation decision? And the only thing in the record was that they were presented two additional claims of no greater significance than the first seven or nine, however you look at it, that preceded them. But they admit that they were on notice at that point. So even their own logic doesn't follow. Now, they claim that a public adjusting firm was recruiting claimants to come in. But if you look at the record closely, that didn't happen until January. So the question that they've never been able to answer is how were they on notice in December of 2014 and not on notice in November of 2014? What changed? Thank you, counsel. Thank you, Court. Massey, you've reserved two minutes. Thank you, Judge Marcus. Big deal made about a two-year voyage and all this pile driving. During that entire two years, it was just those nine, those first nine claims. Those were the only complaints. If we were shaking people's houses to the ground, I'm quite certain that there would have been a whole lot more. Project partner, these terms, business terms, whatever you want to call them, do not define the relationship. I'm quite certain. I honestly don't know if the Orion contract is in the record. It should be. But I'm pretty sure that we're prohibited from being an agent of FDOT and vice versa. I think there's a disclaimer of agency principles there. FDOT is Orion's client. That's the relationship there. And they own the bridge, which is why there's calls going in to them. Even if you count all of the nine, as Judge Anderson noted, if you add them all up at their face value of their claims without ever any scrutiny to the bills, you still don't get anywhere near the value of Orion's vessels. It's about 26%. So even if you consider all of the nine notices, it's of no moment. Finally, the term notice. Okay. I think this is actually like a term. There's a term of art notice for purposes of the statute, but also being put on notice is also a phrase. And what has happened here is that the judge and opposing counsel has latched on to the fact that Orion represented that we didn't know until around December that there were all of these other claims in the hopper. So we wrote it down as that's when we had notice. We're not saying that we had written notice at that point. We're just saying that that's the only time that we had any notice. And as far – it is in Graham Kenyon's deposition about the public adjuster, the claims that representation letters hadn't actually, I think, started coming out in December, but there were these town hall meetings that the public adjuster was holding to bring people in, and Orion was excluded from those. So that's where the concern about additional claims came from. Thank you, counsel. Thank you both for your efforts. This court will be adjourned until 9 a.m. tomorrow morning.